**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lorraine Patterson,<br><br>                Plaintiff,<br><br>v.<br><br>Arizona Department of Economic Security, et al.,<br><br>                Defendants. | No. CV-15-00321-PHX-NVW<br><br>**ORDER** |

Before the court is Defendant Maricopa County's Motion to Dismiss (Doc. 23). The Motion will be granted.

**I.   BACKGROUND**

Plaintiff originally filed suit on February 20, 2015, seeking damages for violations of her First and Fourteenth Amendment rights allegedly suffered during dependency proceedings that Child Protective Services initiated for the benefit of Plaintiff's daughter. (*See* Doc. 1 at 1-3.) In an Amended Complaint submitted on May 29, 2015, Plaintiff asserts six causes of action against more than a dozen defendants, including Maricopa County ("the County").

Plaintiff's first cause of action alleges that the County "established and/or followed policies, procedures, customs, and/or practices which policies were the moving force behind the violations of Plaintiff's constitutional rights, including those under the First and Fourteenth Amendments." (Doc. 17-1 at 27.) Among the policies the County

allegedly adopted—the full list of which goes on for twelve pages—are the "County policy of detaining and/or removing children from their family and homes by County accepting false allegations in Juvenile Dependency Petitions," the "County policy of ignoring evidence discounting the allegations in order to support the claims of [Child Protective Services] Reports to the court," the "policy of appointing attorneys that are far below the reasonable standards of care and due diligence," and the "policy of the County not requiring [Child Protective Services] to produce files in a timely matter [sic] so they can be viewed." (*Id.* at 27, 28, 33, 36.) According to the Amended Complaint, the "conduct described is so pervasive that it has become common knowledge that they [sic] type of misconduct alleged is commonplace within Maricopa County." (Doc. 17-2 at 3.)

Plaintiff's third cause of action, the only other that is asserted against the County, alleges she was deprived of her right to procedural due process during the dependency proceedings. (*Id.* at 15.) Specifically, Plaintiff claims, among other things, that "the hearings denied an opportunity to be heard, present evidence and to dispute the allegations in a timely fashion," that "Plaintiff learned of the allegations after the first court hearing on March 15th, 2013 by happenstance disallowing her to dispute them with evidence," and that "Plaintiff was denied a continuance although unprepared to argue her case on July 24th, 2013." (*Id.* at 16-18.) The Amended Complaint largely fails to make clear exactly who allegedly engaged in the acts that denied Plaintiff procedural due process. (*See id.* at 15-20.) Near the end of Plaintiff's third cause of action, she adds that the "County and those individuals with policymaking decisions did not follow established protocol and assurances that ensure Plaintiff's due process civil rights." (*Id.* at 20.)

The County now moves to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted, as provided by Federal Rule of Civil Procedure 12(b)(6).

**II.     LEGAL STANDARD**

When considering a motion to dismiss, a court evaluates the legal sufficiency of the plaintiff's pleadings. Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To avoid dismissal, a complaint need include "only enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

On a motion to dismiss under Rule 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the non-moving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, the principle that a court accepts as true all of the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To show that the plaintiff is entitled to relief, the complaint must permit the court to infer more than the mere possibility of misconduct. *Id.* If the plaintiff's pleadings fall short of this standard, dismissal is appropriate.

**III.    ANALYSIS**

Plaintiff's claims against the County are rooted in 42 U.S.C. § 1983, which provides, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and

1  laws, shall be liable to the party injured in an action at law, suit in equity, or other proper
2  proceeding for redress."  Although the statute establishes liability for any "person" who
3  deprives a plaintiff of her rights, a municipality such as the County can be held liable
4  under § 1983 in limited circumstances.  On this theory of municipal liability, named after
5  the Supreme Court's decision in *Monell v. Department of Social Services of New York*,
6  436 U.S. 658 (1978), a "municipality cannot be held liable under a respondeat superior
7  theory."  *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008).  "Instead, Congress
8  intended to hold municipalities liable only when 'action pursuant to official municipal
9  policy of some nature caused a constitutional tort.' The 'official policy' requirement was
10 intended to distinguish acts of the *municipality* from acts of *employees* of the
11 municipality, and thereby make clear that municipal liability is limited to action for
12 which the municipality is actually responsible."  *Christie v. Iopa*, 176 F.3d 1231, 1235
13 (9th Cir. 1999) (emphasis in original) (citation and some internal quotation marks
14 omitted).

15 "For purposes of liability under *Monell*, a 'policy' is 'a deliberate choice to follow
16 a course of action . . . made from among various alternatives by the official or officials
17 responsible for establishing final policy with respect to the subject matter in question.' A
18 municipality is also liable if a policymaking official delegates his or her discretionary
19 authority to a subordinate, and the subordinate uses that discretion."  *Fogel*, 531 F.3d at
20 834 (ellipsis in original) (citation omitted).  In addition, a plaintiff may establish liability
21 by proving "the existence of a widespread practice that . . . is so permanent and well
22 settled as to constitute a 'custom or usage' with the force of law."  *Gillette v. Delmore*,
23 979 F.2d 1342, 1349 (9th Cir. 1992) (per curiam) (ellipsis in original).  Where a § 1983
24 plaintiff "provide[s] no evidence that [the municipality] maintained an official policy of
25 [violating constitutional rights] or that any final policymaking official made a decision to
26 violate h[er] rights,"—and where that plaintiff "also [does] not establish[] that any of the
27 officers involved . . . were official policymakers with final decision making authority for
28 [the municipality], or that any official policymaker 'either delegated that authority to, or

1 ratified the decision of, a subordinate,'"—a "municipal liability claim . . . fails." *See*
2 *Fogel*, 531 F.3d at 835.

3 By this standard, Plaintiff's first cause of action fails to state a *Monell* claim. Plaintiff lists nearly two dozen "policies" allegedly adopted by the County, but she offers no concrete facts to support her conclusory allegations. Nowhere does Plaintiff allege which County decision-makers adopted the supposed policies, the precise content of those policies, how they were communicated to County employees, or any other information that would render plausible the idea that the County has adopted such policies. A vague assertion that the County's conduct "is so pervasive that it has become common knowledge that they [sic] type of misconduct alleged is commonplace within Maricopa County" (Doc. 17-2 at 3) does not bridge the plausibility gap. Some of the alleged "policies" are so nebulous that it is difficult to imagine how they could ever be articulated, broadcast, or enforced. (*See, e.g.*, Doc. 17-2 at 2 (describing the "'policy' of County using deceptive tactics that deceive all who view the paperwork").) Others are so expansive that they amount to little more than bald assertions of illegality, in defiance of the Rule 12(b)(6) plausibility standard. (*See, e.g.*, Doc. 17-1 at 31 (asserting that "County has a 'policy' of denying due process within the meaning of the right to be heard in a competent, impartial tribunal within a meaningful time when deprivation of a liberty interest is at stake").)

20 Nor has Plaintiff alleged that any of the individual defendants were "official policymakers with final decision making authority" for the County or that the County's official policymakers delegated their authority to the employees involved in Plaintiff's case. Absent more particularized factual allegations, a bare statement that the County "established and/or followed policies" that were "the moving force behind the violations of Plaintiff's constitutional rights" (Doc. 17-1 at 27) is insufficient.

26 Plaintiff's third cause of action fares no better. The Amended Complaint asserts a § 1983 procedural due process claim against "Defendant COUNTY and those individuals with official policy making capacity and decision making acting under color of state law

when committing the acts alleged herein." (Doc. 17-2 at 16.) But the third cause of action does not directly allege the County adopted any particular policies that resulted in the violation of Plaintiff's rights. The closest the Amended Complaint comes to such an allegation is Plaintiff's contention the "County and those individuals with policymaking decisions did not follow established protocol and assurances that ensure Plaintiff's due process civil rights." (*Id.* at 20.) To the extent the third cause of action alleges County policies, then, it seeks damages for the County's failure to follow those policies, not actions taken pursuant to those policies. Because this falls far short of an adequate *Monell* claim, dismissal of the Amended Complaint is appropriate.

The court screened Plaintiff's complaint three times before permitting it to be served (Doc. 3, 7, 13), and it appears there is little, if anything, she could include in a further amended complaint to address the deficiencies identified in this Order. Nevertheless, because she is proceeding *in propria persona*, the court will allow Plaintiff twenty-one days in which to submit an amended complaint that states a claim upon which relief can be granted. If Plaintiff's amended complaint fails to satisfy Rule 12(b)(6), no further leave to amend will be granted.

IT IS THEREFORE ORDERED that Defendant Maricopa County's Motion to Dismiss (Doc. 23) is granted.

IT IS FURTHER ORDERED that Plaintiff may file by September 2, 2015, an amended complaint that states a claim upon which relief can be granted. If by that date Plaintiff has not submitted an amended complaint, the Clerk shall terminate this case as against Defendant Maricopa County.

Dated this 12th day of August, 2015.

_____
Neil V. Wake
United States District Judge