**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lorraine Patterson,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Carla Miller; Patty Nelson-McCall; Lindsey Romero; JoAnne Mathlin; Karen Youngman; John and Jane Does 1-50,<br><br>　　　　　Defendants. | No. CV-15-00321-PHX-NVW<br><br>**ORDER** |

Before the court is the State Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 88) jointly filed by Defendants Carla Miller, Patty Nelson-McCall, Lindsey Romero, JoAnne Mathlin, and Karen Youngman (collectively, "Defendants"). For the following reasons, the Motion will be granted.

**I.　BACKGROUND**

Plaintiff Lorraine Patterson ("Patterson") alleges that Defendants violated her constitutional rights in an Arizona state dependency proceeding by "suppressing exculpatory evidence, submitting lies in reports to the courts[,] . . . and/or [ ] fabricating evidence." (Doc. 89 at ¶ 4.) She seeks damages under 42 U.S.C. § 1983. Defendants move to dismiss for failure to state a claim upon which relief can be granted.

Despite numerous court orders, Patterson's fourth Amended Complaint still frequently meanders and confuses. *Cf.* Fed. R. Civ. P. 8(a); *McHenry v. Renne*, 84 F.3d 1172, 1177-78 (9th Cir. 1996) (explaining that the Federal Rules of Civil Procedure require pleadings be "simple, concise, and direct"). (The Court also notes that Patterson,

in redacting the complaint that Defendants moved to dismiss, added information without leave of court.)  Although dismissal on Rule 8 grounds alone would be appropriate, the Court attempts to discern what claims Patterson makes.

### A. Carla Miller

Patterson's fourth Amended Complaint alleges that Miller:

1. Failed to offer "corrections" or investigate certain recordings. (Doc. 89 at ¶ 54.)
2. "[S]ubmitted and/or supported untruths in reports to the court used to detain children from parents." (*Id.* at ¶ 125.)

### B. Patty Nelson-McCall

Patterson alleges that Nelson-McCall:

1. Submitted to the state court a report with false claims that Patterson was neglecting her child due to substance abuse and/or mental illness and that Patterson had an eating disorder. (*Id.* at ¶ 32.)
2. Filed a second false dependency report with the state court that failed to include exculpatory evidence and included several lies, such as "Mother keeps changing her mind." (*Id.* at ¶ 44-45, 47-48.)
3. "[S]ubmitted and/or supported untruths in reports to the court used to detain children from parents." (*Id.* at ¶ 125.)

### C. Lindsey Romero

Patterson alleges that Romero:

1. Submitted to the state court a report with false claims that Patterson was neglecting her child due to substance abuse and/or mental illness and that Patterson had an eating disorder. (*Id.* at ¶ 32.)
2. Claimed falsely that Patterson's home was unsuitable and that she refused to allow her daughter to return home. (*Id.* at ¶ 33.)
3. Failed to disclose a doctor's report refuting the false substance abuse and eating disorder claims. (*Id.* at ¶ 39-40.)
4. Filed a second false dependency report with the state court that failed to include

|   |   |
|---|---|
| 1 | exculpatory evidence and included several lies, such as "Mother keeps changing |
| 2 | her mind." (*Id.* at ¶ 44-45, 47-48.) |
| 3 | 5. Left a reference to PTSD in a report after stating that she had removed it. (*Id.* at |
| 4 | ¶ 49.) |
| 5 | 6. "Propose[d] to substantiate untrue charges." (*Id.* at ¶ 59.) |
| 6 | 7. Perjured herself by claiming that Patterson's daughter would not return home |
| 7 | because she felt unsafe. (*Id.* at ¶ 66.) |
| 8 | 8. "[S]ubmitted and/or supported untruths in reports to the court used to detain |
| 9 | children from parents." (*Id.* at ¶ 125.) |

### D. JoAnne Mathlin

Patterson alleges that Mathlin:

1. Described a meeting with Dr. John BiCaccio as a "psychological consult" of Patterson, when no such meeting took place. (*Id.* at ¶ 69.)
2. Disseminated to the Foster Care Review Board, appellate court, schools, and police false claims that Patterson was mentally ill. (*Id.* at ¶ 72-73.)
3. Stated incorrectly that Patterson did not disclose her mental health history. (*Id.* at ¶ 85.)
4. Submitted a "fabricated case plan." (*Id.* at ¶ 103).
5. Reiterated in a report to the court the false claims that Patterson was neglecting her child due to substance abuse and/or mental illness and that Patterson had an eating disorder. (*Id.* at ¶ 105).
6. "[S]ubmitted and/or supported untruths in reports to the court used to detain children from parents." (*Id.* at ¶ 125.)

### E. Karen Youngman

Patterson alleges that Youngman:

1. Disseminated to the Foster Care Review Board, appellate court, schools, and police false claims that Patterson was mentally ill. (*Id.* at ¶ 72-73.)
2. Reiterated in a report to the court the false claims that Patterson was neglecting her

child due to substance abuse and/or mental illness and that Patterson had an eating disorder. (*Id.* at ¶ 105).

3. "[S]ubmitted and/or supported untruths in reports to the court used to detain children from parents." (*Id.* at ¶ 125.)

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

When considering a motion to dismiss, a court evaluates the legal sufficiency of the plaintiff's pleadings. Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To avoid dismissal, a complaint need include "only enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

On a motion to dismiss under Rule 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the non-moving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, the principle that a court accepts as true all of the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To show that the plaintiff is entitled to relief, the complaint must permit the court to infer more than the mere possibility of misconduct. *Id.* If the plaintiff's pleadings fall short of this standard, dismissal is appropriate.

### B. Deliberate Fabrication

For the most part, the fourth Amended Complaint alleges false statements but not that they were each knowingly false. The fourth Amended Complaint generally charges Defendants with "submitting lies in reports to the courts . . . and/or by fabricating evidence . . . ." (Doc. 79 at ¶ 4.) But that does not suffice to allege that all the individual statements were knowingly false. Something must be alleged that makes it plausible that the statements were knowingly false.

"To sustain a deliberate fabrication of evidence claim, . . . a plaintiff must, *at a minimum*, point to evidence that supports at least one of the following two propositions: (1) Defendants continued their investigation of [plaintiff] despite the fact that they knew or should have known that [s]he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Costanich v. Dep't of Soc. and Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010) (quoting *Devereaux v. Abbey*, 262 F.3d 1070, 1076 (9th Cir. 2001) (en banc)). "Failing to follow guidelines or to carry out an investigation in a manner that will ensure an error-free result is one thing; intentionally fabricating false evidence is quite another." *Devereaux*, 262 F.3d at 1076-77. Purposefully mischaracterizing witness statements is one example of deliberate fabrication. *Costanich*, 627 F.3d at 1111.

### III. ANALYSIS

Not enough is alleged to state a claim of deliberate fabrication as the basis for Patterson's § 1983 claim under *Twombly* and *Iqbal*.

Patterson begins and concludes her complaint by accusing Defendants, as a group, of lying or approving lies to the state court. (*Id.* at ¶ 125.) Even when read with the rest of her complaint, this serious allegation is unmoored from any evidence of *intentional* wrongdoing. Absent something more, such conclusory statements do not "nudge[ ] [her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Patterson suggests more specifically that some Defendants deliberately lied to the state court about her mental health. Yet these supposed fabrications/misrepresentations came from the private dependency petition that Patterson's family filed against her. The concerns about Plaintiff's mental health were well supported by the accounts of Plaintiff's own family. (Doc. 89, Ex. 5 at 48 of 94.) The State reported to the state court the reasons that CPS became involved, which necessitated providing details on the claims Patterson's family had made against her. (*Id.*) The relevant portion of the report is even labeled "Reason for CPS Involvement." (*Id.*) These were accounts of CPS's information, not assertions of ultimate metaphysical truth. Further, the state court record reveals that the State did not base its claim on any false information. Instead, the State alleged that Patterson was "unable to parent due to the child's behavior." *Lorraine P. v. Ariz. Dep't of Econ. Sec., M.P.*, No. 1 CA-JV 13-0227, 2014 WL 641856, at *1 (Ariz. Ct. App. Feb. 18, 2014). It is unsurprising, then, that Defendants declined to provide exculpatory information related to matters not before the state court.

Defendants concede that "based solely on the Amended Complaint, we do not know fully what the [ ] Defendants told the [state] court about information Patterson provided them." (Doc. 96 at 3.) They also point out that the reports did briefly describe Patterson's responses to the alleged falsehoods and that Patterson was represented by counsel, who raised these arguments in the state court. (*Id.*)

But that is beside the point: Patterson must plead sufficient facts in *this* case that make it plausible to infer that Defendants deliberately lied to the state court. *Iqbal*, 566 U.S. at 678; *Devereaux*, 262 F.3d at 1076-77. She has not done so. At no point does Patterson demonstrate that Defendants continued investigating her despite the fact that they knew or should have known better. *Costanich*, 627 F.3d at 1111. Nor did Defendants use techniques so coercive or abusive that they should have expected them to yield false information. *Id*. Patterson's claims that Defendants acted otherwise are conclusory and unavailing. Therefore, there is no way for this Court to "draw the

reasonable inference," *Iqbal*, 566 U.S. at 678, that any Defendant intentionally falsified anything.

A few scattered, specific issues remain. The Court disregards any generalized allegations about Defendants besmirching Patterson's character to anyone other than the state court, as those allegations are not relevant to her § 1983 claim. The Court also notes that the significance of Mathlin mischaracterizing Dr. BiCaccio's meeting with Patterson is unclear, and in any event Patterson's own exhibit shows that Dr. BiCaccio describes it as a "consultation." (Doc. 89, Ex. 17 at 82 of 94.) In addition, some of the things that Patterson complains about, such as Romero's assessment that Patterson's house was unsuitable, are simply the professional opinions of CPS officials. Just like the other allegations in the complaint, such opinions are not actionable without *something* more to suggest a nefarious motive. The Complaint does not allege how Defendants had to have known that their well-supported allegations were false.

The other statements in the complaint are too vague or too attenuated from any legal claim. For example, Patterson alleges Miller failed to offer "corrections" or investigate certain recordings; Romero left a reference to PTSD in a report; Romero "[p]ropose[d] to substantiate untrue charges"; Mathlin stated incorrectly that Patterson did not disclose her mental health history; and Mathlin submitted a "fabricated case plan." These statements are all insufficient under federal pleading standards.

## IV. CONCLUSION

The Court normally freely grants leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Yet it also considers five factors in so deciding: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Courts have "especially broad" discretion to deny leave to amend where the plaintiff has already had one or more opportunities to amend a complaint. *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989). *See also Moore v. Kayport*

*Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) ("Leave to amend need not be given if a complaint, as amended, is subject to dismissal."). This is Plaintiff's fifth complaint.

In its numerous previous orders, the Court allowed Plaintiff to address the pleading deficiencies that it identified. It also promised that if Plaintiff's amended complaint failed to pass muster under Rule 12(b)(6), no further leave to amend would be granted. Plaintiff has had five chances to file a legally sufficient complaint. No further leave to amend is appropriate.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (Doc. 88) is granted with prejudice.

IT IS FURTHER ORDERED that the clerk enter judgment in favor of Defendants Carla Miller, Patty Nelson-McCall, Lindsey Romero, JoAnne Mathlin, and Karen Youngman, dismissing Plaintiff Lorraine Patterson's complaint and this action with prejudice.

The clerk shall terminate this case.

Dated this 11th day of October, 2017.

_____
Neil V. Wake
Senior United States District Judge